IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDWARD E. ANDERSON,

    Plaintiff,

  v.

AMERICAN AIRLINES, INC.,

    Defendant.

No. C 08-04195 WHA

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this employment law action, defendant American Airlines, Inc. moves for summary judgment on all claims for relief. Plaintiff Edward E. Anderson opposes. For the reasons set forth below, AA's motion is **GRANTED**.

## STATEMENT

Plaintiff Edward E. Anderson works as a skycap for American Airlines at San Francisco International Airport. Anderson formerly worked as a skycap for Trans World Airlines; his employment with AA began in December 2001, when AA acquired TWA out of bankruptcy. As a skycap, Anderson helps airline passengers check in their luggage at curbside. He is a part-time employee who works a four-hour morning shift, five days per week. AA pays Anderson an hourly wage, and Anderson also collects tip income from the passengers he serves. The volume of Anderson's tip income is the focal point of this lawsuit; Anderson claims that by instituting a series of fee programs for checked luggage, AA has illegally diverted a substantial proportion of Anderson's tip income to itself.

In August 2005, AA began charging passengers a two-dollar service fee for each piece of luggage checked in at curbside through the skycap service. (Passengers could avoid this fee by choosing instead to check in their luggage inside the terminal.) The fee was collected in cash by the skycaps; at the end of each shift, the skycaps were required to document and remit the fee revenue they had collected. AA did not share any portion of this revenue with its skycaps, but the skycaps remained free to collect tips in addition to the fees. AA allegedly discontinued the two-dollar service fee on June 15, 2008. Anderson raised the two-dollar service fee in a previous action against AA, which was dismissed on summary judgment in June 2008 and affirmed on appeal (07-cv-03527 WHA Dkt. Nos. 51, 71). Because of this history, a previous order in the present action held that the doctrine of res judicata limits Anderson's new claims based on the two-dollar service fee to the one-week period between June 6 and June 15, 2008 (Dkt. No. 53).

The June 2008 discontinuation of the two-dollar service fee coincided roughly with AA's institution of a tiered fee schedule for checked luggage. This tiered fee schedule changed over time, and the parties' recollections as to which charges were in place during certain periods differ somewhat. The sworn testimony relied on by AA recounts the history of the tiered fee schedule as follows. For most domestic economy travel between May 12, 2008 and June 15, 2008, the following charges applied to checked luggage: no charge for the first bag; $25 for the second bag; $100 each for the next three bags, and $200 for each bag thereafter. For most domestic economy travel between June 15, 2008, and the next date on which the fees were revised, the following charges applied to checked luggage: $15 for the first bag, $25 for the second bag, $100 each for the next three bags, and $200 for each bag thereafter. Other revisions to the fee schedule have been made. At present, for most domestic economy travel, the following charges apply to checked luggage: $25 for the first bag, $35 for the second bag, and additional charges for oversized and overweight items (Dupont ¶¶ 5–8). The charges prescribed by these fee schedules applied to all checked bags, regardless whether they were checked in at curbside through the skycap service or within the airport terminal. For bags checked in at curbside, the fees were collected and processed by the skycaps. No portion of the revenue from these fees was shared with the skycaps.

2

Anderson claims that the volume of his tip income was adversely affected by the two-dollar service fee "from January 6, 2008 to January 14, 2008," by the $15-$25-$100 fee schedule "from January 15, 2008," and by the $25-$35-$100 fee schedule "from February, 2010"(Opp. 3).[1] Anderson advances two basic causal theories to support this argument. *First*, Anderson explains that with the advent of the fees, he was required to perform new administrative duties with respect to fee collection and processing. Specifically, Anderson states that he was required to devote fifteen minutes at the end of each four-hour shift to "reconciling the bag charges." Anderson's new administrative responsibilities created an economic opportunity cost: "This was time that Mr. Anderson could not handle bags and earn tips" (Opp. 15). *Second*, Anderson argues that passengers were less likely to tip skycaps as much or at all after AA instituted luggage fees — either because the passengers erroneously thought that the charges included gratuity, or because the passengers felt less generous after having to pay the fees.

Anderson brings eight claims for relief in his second amended complaint based on these factual theories: (1) violation of California Labor Code Section 351; (2) tortious interference with contractual and/or advantageous relations; (3) quantum meruit; (4) conversion; (5) unjust enrichment; (6) retaliation; (7) breach of contract and covenant of good faith; and (8) unfair competition (Dkt. No. 73). Defendant AA moves for summary judgment or judgment on the pleadings for all eight counts. This order follows full briefing and a hearing on the motion. Counsel's arguments do not differentiate between the two-dollar service fee and the tiered fee for checked bags. The rationale in this order also applies equally to both categories of fees.

**ANALYSIS**

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the

---

[1] Based on other statements in Anderson's opposition brief and on the weight of the evidence, it appears that Anderson means "June" instead of "January" here.

3

1   non-moving party, and "material" only if the fact may affect the outcome of the case.
2   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In this analysis, all reasonable
3   inferences must be drawn in the light most favorable to the non-moving party. *Johnson v. Racnho*
4   *Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010). Unsupported conjecture or
5   conclusory statements, however, cannot defeat summary judgment. *Surrell v. Cal. Water Serv.*
6   *Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

7   Where the party moving for summary judgment would not bear the burden of proof at
8   trial, that party bears the initial burden of either producing evidence that negates an essential
9   element of the non-moving party's claims, or showing that the non-moving party does not have
10  enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See*
11  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving
12  party does not satisfy its initial burden, then the non-moving party has no obligation to produce
13  anything and summary judgment must be denied. If, however, the moving party satisfies its
14  initial burden of production, then the non-moving party must produce admissible evidence to
15  show there exists a genuine issue of material fact. *Id.* at 1102–03.

16  **1.   EVIDENCE**

17  Federal Rule of Evidence 201(d) states: "A court shall take judicial notice if requested by
18  a party and supplied with the necessary information." A judicially noticeable fact is one that is
19  "not subject to reasonable dispute in that it is either (1) generally known within the territorial
20  jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to
21  sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Anderson
22  requests judicial notice of two orders from *DiFiore v. American Airlines, Inc.*,
23  07-cv-10070 WGY, a civil action before the United States District Court for the District of
24  Massachusetts. These orders were issued on April 12, 2007 and June 19, 2008, and they were
25  filed in the public record. Anderson's request for judicial notice (Dkt. No. 115) is **GRANTED**.
26  AA requests judicial notice of two other filings from the *DiFiore* action: the third amended
27  complaint, dated November 7, 2007, and a pretrial memorandum dated January 7, 2008. These
28  documents were filed in the public record. AA also requests judicial notice of a complaint

4

1    Anderson filed with the California Labor Commissioner on January 3, 2007. Judicial notice of
2    the records of administrative agencies is proper. *See Bryant v. Carleson*, 444 F.2d 353, 357–58
3    (9th Cir. 1971). AA's request for judicial notice (Dkt. No. 94) is **GRANTED**. This order notes
4    that holdings by the Massachusetts district court in the *DiFiore* action are not binding in
5    this action.

6    In the February 8 order regarding plaintiff's summary judgment motion, Anderson was
7    warned that his opposition to AA's summary judgment motion "must stand alone for purposes of
8    opposing defendant's motion and may not cross-reference materials related to plaintiff's own
9    summary judgment motion that have been stricken or have yet to be filed" (Dkt. No. 110 at 2).
10   Anderson's opposition brief does not comply with this order. Apart from the request for judicial
11   notice of two Massachusetts district court decisions, Attorney Roesti did not file any supporting
12   materials along with his opposition brief. Instead, factual support for the opposition brief comes
13   entirely from references to documents he filed on February 10 as exhibits to Anderson's summary
14   judgment motion (Opp. at 1 n.2). This approach directly violated the February 8 order and
15   created the unusual circumstance that Anderson has not properly produced *any* evidence opposing
16   AA's summary judgment motion. AA objects to the cross-references in Anderson's opposition
17   brief and requests that all such references be stricken (Reply Br. 1 n.1). As a concession to the
18   shortness of life, however, AA's objection is overruled. The evidence improperly incorporated
19   into Anderson's opposition brief by way of reference to the materials filed in support of
20   Anderson's own summary judgment motion will be considered. Anderson's eight operative
21   claims for relief will be addressed in turn.

22   **2.    COUNT ONE: CALIFORNIA LABOR CODE SECTION 351**

23   There is no private right of action for the violation of California Labor Code Section 351.
24   *Lu v. Hawaiian Gardens Casino, Inc.*, 236 P.3d 346, 353 (Cal. 2010). Anderson does not dispute
25   that this is the state of the relevant law; rather, Anderson's opposition brief explains that any
26   violation of Section 351 is raised only as a "statutory predicate" to his claims for unfair business
27   competition, tortious interference with advantageous economic relations, and conversion
28

5

(Opp. 7).[2] Because Anderson cannot independently sue on Section 351, AA's motion for summary judgment on count one is **GRANTED**.

**3.     COUNT TWO: TORTIOUS INTERFERENCE WITH CONTRACTUAL AND/OR ADVANTAGEOUS RELATIONS**

The tort of interference with prospective economic advantage has five essential elements: (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the acts of defendant. *Asia Investment Co. v. Borowski*, 184 Cal. Rptr. 317, 133 Cal. App. 3d 832, 840–41 (Cal. Ct. App. 1982). AA moves for summary judgment with respect to Anderson's tortious interference claim on the grounds that Anderson cannot prove the first element of this tort — the existence of a business or economic relationship between Anderson and AA's passengers. To negate this element, AA points to deposition testimony in which Anderson testified that he does not recognize regular or repeat customers among the passengers he serves and that the passengers have complete discretion regarding whether and how much to tip Anderson (O'Brien Exh. B at 72:15–73:3, 83:6–18). This showing is sufficient to satisfy AA's initial burden of negating an essential element of the tort. AA thus shifts to Anderson the burden of producing admissible evidence to show there exists a genuine issue of material fact for trial.

In response, Anderson argues that he does not need to prove that he had an existing relationship with customers. Citing *Youst v. Longo*, 43 Cal. 3d 64, 71 (Cal. 1987), Anderson states that instead, "the threshold question is 'facts showing that the plaintiff had any reasonable expectation of economic advantage which would otherwise have accrued'" (Opp. 12). Anderson misreads *Youst*. In footnote six, the *Youst* decision explicitly enumerates the five elements for intentional interference with prospective economic advantage, including "an economic relationship between the plaintiff and some third party," as set forth above. *Youst*, 34 Cal. 3d at 71 n.6. The "threshold question" Anderson references is "a threshold causation requirement"

---

[2] Anderson's opposition brief contains two consecutive pages that are both labeled as page seven. This citation refers to the second one.

6

1  that must be satisfied in order to maintain a cause of action for this tort.  This threshold
2  requirement exists separate from and in addition to the five elements of the tort;  it serves a gate-
3  keeping function to prevent unmeritorious claims from even reaching the five-element analysis.
4  *Id.* at 71–72.  The exhibits that Anderson cites as establishing the threshold requirement do not
5  raise a triable issue as to the existence of an economic relationship between Anderson and AA's
6  passengers.  Accordingly, AA's motion for summary judgment on count two is **GRANTED**.  This
7  order does not address the other elements of Anderson's tortious interference claim.

**4.    COUNTS THREE AND FIVE:  QUANTUM MERUIT AND UNJUST ENRICHMENT**

Quantum meruit "refers to the well-established principle that the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." *Huskinson & Brown, LLP v. Wolf*, 84 P.3d 379, 381 (Cal. 2004) (internal quotations omitted).  Unjust enrichment, on the other hand, is "is synonymous with restitution." *McBride v. Boughton*, 20 Cal. Rptr. 3d 115, 121 (Cal. Ct. App. 2004).  "Under the law of restitution, an individual is required to make restitution if he or she is unjustly enriched at the expense of another." *Id.* at 122 (internal quotations omitted).  Anderson's claims for relief under quantum meruit (count 3) and unjust enrichment (count 5) are pled as alternative bases for recovery (Opp. 13).  The main thrust of counts three and five is that because Anderson collected the baggage fees for AA, AA should either pay Anderson for rendering that collection service (quantum meruit), or restore to Anderson the benefit of the collected fees (unjust enrichment/restitution).

**A.    Count Three:  Quantum Meruit**

Regarding the quantum meruit claim, AA argues that "no additional compensation by American to Plaintiff ever was contemplated" (Br. 14).  AA explains that Anderson was paid an hourly wage as compensation for all duties he performed as a skycap, including collection of the baggage fees.  Anderson does not identify any evidence tending to show that his hourly wage did *not* cover the task of collecting baggage fees.  Anderson's opposition brief recounts: "Skycaps were told to sign an agreement to do the work, with no additional compensation, or resign.

7

Anderson did the additional work under protest." (Opp. 15).[3] It is a regrettable fact of the modern economy that workers in all sectors routinely are given additional job responsibilities without any accompanying raise in pay. That AA used this familiar pattern to implement its new baggage-fee programs does not imply that AA's skycaps were not compensated for performing their new duties. Anderson has not identified any admissible evidence from which a reasonable trier of fact could conclude that the circumstances under which Anderson collected baggage fees demonstrated that he was entitled to payment for rendering that service beyond the hourly wage he already received. Indeed, Anderson has not identified any admissible evidence *at all* relevant to his claim for relief in quantum meruit. AA's motion for summary judgment on count three is **GRANTED**. This order does not reach AA's alternative arguments regarding Anderson's quantum meruit claim.

### B.     Count Five: Unjust Enrichment (Restitution)

Regarding the unjust enrichment (restitution) claim, AA argues that Anderson cannot show that AA was *unjustly* enriched at Anderson's expense. The mere fact that a benefit has been conferred is not itself sufficient to require restitution; the retention of the benefit must be somehow wrongful. Where "no cognizable legal right of the [claimant] has been violated," unjust enrichment has not occurred and restitution is not warranted. *Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 226 Cal. Rptr. 321, 181 Cal. App. 3d 122, 134–35 (Cal. Ct. App. 1986). AA argues that AA's retention of the baggage fees was not unjust, because the fees are authorized by statue and Anderson had no claim to this revenue (Br. 14).

In his opposition, Anderson does not identify any cognizable legal right that AA allegedly violated in retaining the baggage-fee revenue Anderson collected. At the hearing, Anderson's counsel conceded that the fees themselves were proper but argued that the "manner" in which they were collected was unfair. Anderson finds the manner of collection objectionable in two respects: (1) that passengers were required to pay the fees by credit card but were not allowed to pay tips by credit card; and (2) that signage regarding the fees included legends like "GRATUITY

---

[3] Anderson's opposition brief contains two consecutive pages that are both labeled as page fifteen. This citation refers to the second one.

8

NOT INCLUDED" in small lettering at the bottom, instead of in a more prominent size and location. Anderson's counsel, however, was unable to articulate how either of these practices might be unlawful. As such, Anderson's claim that AA's retention of this revenue was unjust is wholly unsupported. AA's motion for summary judgment on count five is **GRANTED**. This order doe s not reach AA's alternative arguments regarding Anderson's unjust enrichment claim.

**5.    COUNT FOUR: CONVERSION**

"Conversion is the wrongful exercise of dominion over the property of another." *Oakdale Village Group v. Fong*, 50 Cal. Rptr. 2d 810, 43 Cal. App. 4th 539, 543 (Cal. Ct. App. 1996). "The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Id.* at 543–44. AA argues that Anderson cannot establish "ownership or right to possession" of the baggage-fee revenue or the allegedly lost tip income. Regarding the baggage fees, AA cites Anderson's deposition testimony explaining that he told passengers that the baggage fees did not include gratuity and pointed out the signs to that effect (O'Brien Exh. B at 36:11–37:22, 73:20–75:13). AA argues that in light of this testimony, no portion of the baggage fees paid by these passengers was intended for Anderson personally. Regarding the allegedly lost tip income, AA cites Anderson's deposition testimony admitting that AA passengers are not obligated to tip skycaps (O'Brien Exh. B at 83:6–18). In his opposition brief, Anderson does not cite any admissible evidence tending to establish his ownership or right to possession of the baggage-fee payments or allegedly lost tip income. Indeed, Anderson does not cite any evidence bearing upon this issue at all (Opp. 12–13). Accordingly, AA's motion for summary judgment on count four is **GRANTED**. This order does not reach AA's alternative arguments regarding Anderson's conversion claim.

**6.    COUNT SIX: RETALIATION**

Anderson does not allege any statutory basis for his retaliation claim. To establish a prima facie case of common law retaliation, Anderson must show (1) that he engaged in a protected activity; (2) that AA subjected him to an adverse employment action; and (3) that there exists a causal link between the protected activity and AA's action. *Colarossi v. Coty US Inc.*,

9

1    119 Cal. Rptr. 2d 131, 137 (Cal. Ct. App. 2002).  AA argues that Anderson is unable to prove any
2    of these three elements with respect to the baggage fees and therefore cannot show that AA's
3    adoption of the baggage-fee programs constituted retaliation against Anderson.
4         Regarding the third element, causation, AA cites sworn testimony explaining that AA's
5    adoption of the baggage-fee programs "was a major undertaking driven only by considerations of
6    cost reduction, cost management and revenue enhancement" — legitimate, nonretaliatory
7    purposes (Dupont Decl. ¶ 10).  AA submits that Anderson "has no admissible evidence that
8    demonstrates, or even suggests" that AA's decision to implement the baggage-fee programs had
9    any connection at all to Anderson's exercise of protected rights (Br. 17).  AA also notes that
10   temporal proximity, standing alone, is insufficient to establish causation for a prima facie case of
11   retaliation.  *Chen v. County of Orange*, 116 Cal. Rptr. 2d 786, 789 (Cal. Ct. App. 2002).
12   Anderson responds with one conclusory sentence:  "In response to verdict against American in
13   the *Di Fiore case*, instead of taking any measures to bring its practices in line with the *Di Fiore*
14   opinion, American adopted baggage-fee charges to the extreme." [*sic*] (Opp. 18–19).[4]  Anderson
15   does not cite *any* evidence in support of this causal assertion.  Accordingly, Anderson has failed
16   to show that a triable issue of fact exists as to the causation element of his retaliation claim.  AA's
17   motion for summary judgment on count six is **GRANTED**.  This order does not reach AA's
18   arguments regarding the first two elements of Anderson's retaliation claim.

19   **7.    COUNT SEVEN:  BREACH OF CONTRACT AND COVENANT OF GOOD FAITH**

20        Anderson's seventh claim for relief alleges that Anderson's employment with AA was
21   "under a Status Quo Agreement that was to ensure that plaintiff would retain all the collective
22   bargaining benefits he had enjoyed as a skycap for Transworld Airlines" *and* "under a contract,
23   express or implied, oral or written, that provided for plaintiff to have gratuities and tip income as
24   a part of his compensation" (Dkt. No. 73 ¶ 36).  This language implies the existence of two
25   contracts — one that allegedly extended the terms of Anderson's collective bargaining agreement
26   with TWA, and another that allegedly guaranteed Anderson tip income.  The operative complaint

---

[4] Here Anderson is referring to *DiFiore v. American Airlines, Inc.*, 07-100070 WGY, a civil action before the United States District Court for the District of Massachusetts.  Anderson admits that he "was not a member of" that action (Opp. 18).

10

1  further alleges that by adopting its baggage-fee programs, AA breached "the terms of its contract
2  with plaintiff" and also breached the implied covenant of good faith and fair dealing that
3  accompanies "[t]he provisions of plaintiff's contract with defendant" (Dkt No. 73 ¶ 36–37). This
4  language implies the existence of only one contract between the parties.

Focusing on the alleged "Status Quo Agreement," AA argues that count seven is preempted by Section 301 of the Labor Management Relations Act, which addresses jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. 185(a). The Ninth Circuit has explained that "[t]he preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (internal citations omitted). AA argues that because the alleged Status Quo Agreement between Anderson and AA adopted the terms of the former collective bargaining agreement between Anderson and TWA, the claim based on the Status Quo Agreement cannot be evaluated absent interpretation of the underlying collective bargaining agreement (Br. 19). AA supports this argument with Anderson's pleadings and deposition testimony explaining the genesis of his collective bargaining agreement with TWA when he was a union member and characterizing his Status Quo Agreement with AA as adopting the terms of the collective bargaining agreement (O'Brien Exh. A at 34:31–35:13, 142:4–20).

Anderson responds by attempting to distinguish between the Status Quo Agreement, on the one hand, and the collective bargaining agreement whose terms it allegedly adopts, on the other. Anderson's opposition brief states: "Mr. Anderson worked for American Airlines under an employment agreement, known to him as a Status Quo agreement, and not a Collective Bargaining Agreement." (Opp. 15).[5] Anderson further argues that "[t]he fact that Mr. Anderson had a right to keep the gratuities and tip income under the Status Quo Agreement with American that were previously included under the collective bargaining agreement with TWA did not

---

[5] Anderson's opposition brief contains two consecutive pages that are both labeled as page fifteen. This citation refers to the second one.

11

1  required any evaluation of the previous CBA agreement in TWA" [*sic*] (Opp. 16–17).  Anderson,
2  however, does not cite any evidence to support the contention that his right to keep his tip income
3  derives from an independent source other than the terms of the collective bargaining agreement as
4  incorporated in the alleged Status Quo Agreement.  Anderson does not identify any agreement
5  other than the alleged Status Quo Agreement as a basis for this right.  Nor does Anderson identify
6  any provision of the alleged Status Quo Agreement other than its incorporation of the terms of the
7  TWA collective bargaining agreement.  Neither party has identified a specific document as the
8  alleged Status Quo Agreement, but the American Airlines Terms of Employment Agreement that
9  Anderson signed on December 20, 2001, provided that Anderson's employment "shall be in
10 accordance with . . . any applicable labor agreement" (Roesti Exh. 6, Dkt. No. 111-2 at 24).
11 Suing on such an incorporation by reference indubitably would require analysis of the terms of
12 the underlying labor agreement.

13    Regarding his claim for breach of the implied covenant of good faith and fair dealing,
14 Anderson further argues that "American has set forth no facts to show that it exercised that
15 discretion in good faith" (Opp. 17).[6]  Anderson misapplies the relevant burden of proof.  To
16 prevail on its motion, AA need only demonstrate that Anderson is unable to show that AA
17 breached the implied covenant.  Because Anderson's claims based on the alleged Status Quo
18 Agreement are preempted by Section 301 of the Labor Management Relations Act, AA's motion
19 for summary judgment on count seven is **GRANTED**.  This order notes that Anderson filed three
20 versions of his complaint, and none of them pled a Section 301 claim.  Nor has Anderson cited to
21 or identified his alleged collective bargaining agreement with TWA.  This order does not reach
22 AA's arguments regarding the LMRA limitations period and res judicata preclusion of this claim.

23 **8.    COUNT 8:  UNFAIR COMPETITION**

24    California's unfair competition law is codified at Sections 17200–17209 of the California
25 Business and Professions Code.  Anderson's unfair competition claim is brought pursuant to
26 Section 17200, which defines unfair competition to include "any unlawful, unfair or fraudulent

---

28    [6]Anderson's opposition brief contains two consecutive pages that are both labeled as page seventeen. This citation refers to the second one.

12

1  business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. &
2  PROF. CODE § 17200. "In effect, the UCL borrows violations of other laws — such as the state's
3  antidiscrimination laws — and makes those unlawful practices actionable under the UCL."
4  *Lazar v. Hertz Corp.*, 82 Cal. Rptr. 2d 368, 375 (Cal. Ct. App. 1999) (referring to California's
5  unfair competition law as "UCL"). The statutory predicate for Anderson's Section 17200 claim is
6  AA's alleged "conduct that diverts tip and gratuity income paid to employers that was paid to
7  employees as set forth in Labor Code Section 351" [*sic*] (Dkt. No. 73 at ¶ 38).

8  AA argues that Anderson's Section 17200 unfair competition claim fails because the
9  underlying Section 351 claim — which was asserted independently as count one — fails factually
10  and as a matter of law. In granting AA's motion for summary judgment on count one, this order
11  found that there is no private right of action for the violation of California Labor Code
12  Section 351. Even so, however, "such violations are actionable as unlawful business practices."
13  *Etheridge v. Reins Int'l Cal., Inc.*, 91 Cal. Rptr. 3d 816, 819 n.6 (Cal. Ct. App. 2009). Thus,
14  Anderson is correct that a violation of Section 351 could serve as a statutory predicate for his
15  unfair competition claim. The particular violation of Section 351 Anderson alleges, however, is
16  not supported by any admissible evidence.

17  Section 351 protects an employee's rights to receive and to keep any gratuity that is paid,
18  given to, or left for the employee by a patron. CAL. LAB. CODE § 351. Unlike a more typical
19  Section 351 plaintiff, Anderson does not allege that his employer misappropriated monies that its
20  customers left or paid specifically as skycap tips. Instead, Anderson's theory is that by instituting
21  the baggage-fee programs, AA "diverted" cash flow that otherwise *would have* been given to
22  skycaps as tips. AA argues that Anderson cannot prove his Section 351 claim, because revenue
23  AA collected as baggage-fee payments did not include any gratuity to which Anderson was
24  entitled. AA supports this argument with deposition testimony from Anderson admitting that tips
25  spring entirely from the passengers' discretion, and that Anderson informed passengers that the
26  baggage fees did not include gratuity (O'Brien Exh. B at 36:11–37:18, 73:20–75:13, 83:6–18).

27  In response, Anderson does not cite any admissible evidence to support his theory.
28  Anderson's opposition brief merely repeats conclusory statements such as the following, without

providing any factual basis: "By the manner in which the baggage-fee charges were implemented, and administered, the fee charge was designed to target monies formerly part of an employee's tip income, and divert it to American" [*sic*] (Opp. 9).  These conclusory statements do not create a triable issue of fact under Section 351.  Nor does counsel's oral elaboration of why Anderson finds AA's manner of fee collection objectionable.  As explained in the context of the unjust enrichment claim, Anderson objects to a credit card policy and to the design of informational signage.  Even drawing reasonable inferences in Anderson's favor, these facts do not show that any portions of the baggage fees paid by AA customers were intended as tips for Anderson.

Anderson's Section 351 theory is not a viable predicate for his Section 17200 claim, and Anderson does not identify any other allegedly unfair business practices that form the basis for this claim.  Accordingly, AA's motion for summary judgment on count eight is **GRANTED**.

*          *          *

Because AA's motion for summary judgment was granted as to each claim for relief on other grounds, this order does not reach AA's argument that Anderson's California statutory and common law claims are preempted by the Airline Deregulation Act of 1978.

## CONCLUSION

Plaintiff Edward E. Anderson's request for judicial notice is **GRANTED**.  Defendant American Airlines, Inc.'s request for judicial notice is also **GRANTED**.  Defendant's motion for summary judgment is **GRANTED**.  There is no claim left to try.  The case is now ready for review by the court of appeals.  Judgment shall be entered accordingly.  All remaining hearings and case management dates are **VACATED**.

**IT IS SO ORDERED.**

Dated: March 9, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE